IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEPHEN KING,

       *Plaintiff,*

v.                                                                    CIV. 11-1042 GBW

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration.

## ORDER GRANTING
## PLAINTIFF'S MOTION TO REVERSE AND REMAND

       This matter comes before the Court on Plaintiff's Motion to Reverse and Remand

the Commissioner's decision to deny Plaintiff disability insurance benefits.  *Doc. 23*.  For

the reasons discussed below, the Court grants Plaintiff's motion and remands this

action to the Commissioner for further proceedings consistent with this opinion.

I.      BACKGROUND

    **A.  Plaintiff's medical history**

       Plaintiff's relevant medical history begins in 2005, when he started seeing Dr.

Gerzain Chavez, a general practitioner, at the Rodeo Family Medical clinic.  On

February 24, 2005, Plaintiff told Dr. Chavez that he had "just retired" and "want[ed] to

make sure that his clinical status is stable to go into retired life and travel."[1]

Administrative Record ("AR") at 499.  Dr. Chavez determined that Plaintiff suffered

---

[1] This date is inconsistent with Plaintiff's application for disability benefits which states that he was laid-off on September 1, 2005.

from Chronic Obstructive Pulmonary Disease ("COPD"), Obstructive Sleep Apnea ("OPA"), hypertension, dyslipidemia, and depression, and noted that he engaged in chronic tobacco and alcohol use, but wanted to quit. *Id*. When he visited Dr. Chavez again in October 2005 and February 2006, Dr. Chavez confirmed those diagnoses. *Id*. at 495-96. On Plaintiff's March 28, 2006, visit, Dr. Chavez, noted that Plaintiff also suffered from hypothyroidism. *Id*. at 494.

On July 24, 2006, Plaintiff visited Dr. Timothy Johnson, an ophthalmologist, for a LASIK evaluation. *Id*. at 265. At that appointment, Plaintiff denied having blood sugar control or blood pressure problems, and denied taking any ocular or oral medications. *Id*. Dr. Johnson determined that Plaintiff was not a candidate for LASIK due to amblyopia and macular degeneration. *Id*. at 266.

In the fall of 2006, the Rodeo Family Medical Clinic referred Plaintiff to the New Mexico Heart Institute ("NMHI") due to his complaints of chest pain. *Id*. at 280. Plaintiff first visited NMHI on September 12, 2006, where he was treated by Dr. Geoffrey Webber, a cardiologist. *Id*. Dr. Webber found that Plaintiff had multiple cardiac risk factors and recommended that he undergo a heart catheterization evaluation. *Id*. at 282. During the catheterization, a stent was placed in Plaintiff's right coronary artery. *Id*. at 305, 347. On October 2, 2006, Plaintiff visited Dr. Webber for a follow-up appointment. *Id*. at 277. At that time, Dr. Webber noted that Plaintiff

2

suffered from coronary artery disease, hypertension, hyperlipidemia, and type II diabetes mellitus. *Id*. at 278.

Plaintiff began seeing Dr. Mark Reininga, a general practitioner at the Santa Fe Communty Guidance Center, in July 2007. *See id*. at 595. On October 18, 2007, Dr. Reininga encouraged Plaintiff to apply for social security disability benefits, *id*. at 588, which Plaintiff did on October 25, 2007. *Id*. at 182. On December 3, 2007, Plaintiff returned to Dr. Chavez. *Id*. at 488. Dr. Chavez determined that Plaintiff's diabetes was poorly controlled and that he continued to suffer from coronary artery disease, hypertension, dyslipidemia, insomnia, depression, hypothyroidism, obesity, and apparent hypogonadism. *Id*. at 489-90. Dr. Chavez commented that Plaintiff had been seeing several different doctors who were all prescribing different medications. *Id*. at 490. He encouraged Plaintiff to seek treatment from a single primary care provider. *Id*.

By early 2008, the Social Security Administration ("SSA") began requesting physical and mental evaluations of Plaintiff in order to evaluate his disability application. On January 3, 2008, Dr. Warren Steinman, a psychologist, conducted a mental status examination of Plaintiff. *Id*. at 527. Dr. Steinman diagnosed Plaintiff with major depressive disorder, alcohol abuse, and nicotine dependence, and noted that "Mr King's behavior and lifestyle is generating the very problems he is depressed about." *Id*. at 529. He concluded that Plaintiff "is likely to be limited in his ability to relate effectively with co-workers and supervisors," but that "[h]is intellectual abilities are

3

sufficient to be able to expect him [to] adapt to basic changes in routine or in his work environment." *Id*.

On February 23, 2008, Dr. Martin Trujillo, a general practitioner, conducted a physical disability determination examination of Plaintiff for the SSA. *Id*. at 566. He found that Plaintiff had a "[f]ull range of motion of all extremity joints and the spine" as well as "good grip and general strength." *Id*. at 567. Dr. Trujillo determined that Plaintiff's hypertension, coronary artery disease, and diabetes were in poor control, and that Plaintiff also suffered from obesity, depression, hyperlipidemia, sleep apnea, and COPD, and that he abused tobacco and alcohol. *Id*. at 568. Dr. Trujillo concluded that Plaintiff "should be able to perform light duty with a lifting limit of 20 pounds." *Id*.

On July 17, 2008, Dr. Reininga completed a Multiple Impairment Questionnaire in which he opined that Plaintiff suffered from COPD, type II diabetes mellitus, obesity, depression, high lipids, hypothyroidism, hypogonadism, and polycythemia. *Id*. at 595. He also discussed Plaintiff's physical limitations, stating that Plaintiff can lift and carry up to five pounds occasionally but never anything heavier, *id*. at 598, and that Plaintiff is "essentially precluded" from grasping and twisting objects, using his fingers and hands for fine manipulations, and using his arms for reaching. *Id*. at 598-99.

In 2008, Dr. Reininga referred Plaintiff to Dr. R. Brad Stamm, a cardiologist at NMHI, in order "to reestablish with a cardiologist and to discuss concerns about him having thick blood." *Id*. at 669. After examining Plaintiff in July 2008, Dr. Stamm

reaffirmed many of the diagnoses of prior doctors, including coronary artery disease, hypertension, hyperlipidemia, and diabetes.  *Id*. at 672.  In response to the SSA's request that he evaluate Plaintiff's cardiac impairment, on December 16, 2008, Dr. Stamm stated that Plaintiff "does not appear to have a significant cardiovascular impairment" but that he "does have quite significant COPD."  *Id*. at 668.

Plaintiff has continued to see Dr. Reininga.  *Id*. at 24-25, 29-33, 679-88.  On September 9, 2009, Plaintiff fell and fractured his pelvis.  *Id*. at 676, 691.

**B.  Procedural history**

Plaintiff applied for Social Security disability insurance benefits on October 25, 2007.  *Id*. at 182.  In that application, he stated that he stopped working on September 1, 2005, both because he was "laid off" on that date, *id*. at 198, and because  he "became unable to work because of his disabling condition" on that date.  *Id*. at 182.  Plaintiff reported suffering from heart disease, high blood pressure, high cholesterol, sleep apnea, insomnia, diabetes, depression, and asthma.  *Id*. at 198.  His partner, Diane Courtney, confirmed these ailments, stating that Plaintiff is "depressed" and "has had great difficulty adjusting to the changes that the diabetes has required."  *Id*. at 205-12.

Plaintiff listed two past jobs in his work history: telephone lineman and property manager.  *Id*. at 221-25.  As a telephone lineman from 1970 to 2005, Plaintiff was "responsible for telephone maintenance," including "installing lines," "hanging cable," and "climbing poles."  *Id*. at 221-23.  Plaintiff was a property manager for only one year.

5

*Id.* at 224.  In that job, he spent one to two hours per day standing or walking, and one hour per day stooping, kneeling, crouching, or crawling.  *Id.*  Although the job did not require frequent lifting, at times he lifted as much as 50 pounds.  *Id.*

On March 5, 2008, the SSA notified Plaintiff that he did not qualify for disability benefits.  *Id.* at 70.  Plaintiff requested reconsideration of that determination on May 1, 2008.  *Id.* at 74.  Plaintiff did not submit additional evidence with his request.  *Id.*  On July 25, 2008, the SSA determined that its prior decision denying benefits was proper, explaining that Plaintiff's "condition is not severe enough to keep [him] from working." *Id.* at 78.

On August 29, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 84.  He again submitted no additional evidence but asked to appear at the hearing.  *Id.*  ALJ Dan Dane held the hearing on February 23, 2010.  *Id.* at 40.  On April 14, 2010, he issued his decision, finding that Plaintiff was not disabled during the period between Plaintiff's alleged disability onset date of September 1, 2005, and September 9, 2009 (the "interim period"), but that Plaintiff was disabled and eligible for disability benefits as of September 9, 2009.  *Id.* at 49, 51.

In making that determination, the ALJ first found that Plaintiff suffered from "medically determinable, severe impairments" dating back to September 1, 2005.  *Id.* at 42.  He then determined Plaintiff's residual functional capacity ("RFC"), finding that "as of September 01, 2006, claimant had the exertional capacity for the sustained

performance (SSR 96-8p) [of] wide range of relatively less strenuous light work duties." *Id.* at 45. The ALJ "imposed . . . additional restrictions on this base-level exertional capacity: he could frequently lift/carry no more than ten pounds, occasionally lift/carry twenty pounds, stand and/or walk for six hours, but not for a full eight-hour workday, and sit for eight hours per day." *Id.* He found that Plaintiff's mental impairments had only a "minimal effect on his ability to work." *Id.* at 46.

The ALJ next considered whether, in light of this RFC, Plaintiff could have returned to his previous work during the interim period. He determined that Plaintiff could not have returned to his previous job as a telephone lineman. *Id.* at 47. He also found that Plaintiff could not have returned to his previous job as a property manager as that job is customarily performed in the national economy because that position has a specific vocational preparation ("SVP") rating of eight. *Id.* Jobs with an SVP of eight require four to ten years of prior experience to master the necessary skills. *Id.* As Plaintiff had only been a property manager for one year, he could not qualify for a position with an SVP of eight. *Id.* However, relying on the testimony of the Vocational Expert (VE), Michael Driscoll, the ALJ found that Plaintiff could have performed the job of property manager as he actually performed it because his actual position was rated as SVP six.[2] *Id.* Positions with an SVP of six require only one to two years of prior

---

[2] Mr. Driscoll's testimony at the hearing was ambiguous. When asked by the ALJ about Plaintiff's past work, he stated, "And then there's [an] indication in the vocational report of working as a property manager. And that job's an SVP 4 job. Light physical demand. That's a semi-skilled job." AR at 62.

experience, which Plaintiff had.  *Id*.  Because he could return to a prior job as a property

manager as he actually performed it, the ALJ concluded that Plaintiff was not disabled

during the interim period.  *Id*.  He found that Plaintiff became disabled as of September

9, 2009, when he fell and fractured his pelvis, significantly limiting his exertional

capacity.  *Id*. at 48.

Plaintiff requested that the SSA Appeals Council review the ALJ's decision "to

the extent that it denies [Plaintiff] a period of disability and disability benefits for the

period of time between his alleged onset date and the disability onset date found by the

ALJ."  *Id*. at 14.  On September 28, 2011, the Appeals Council denied that request,

finding "no reason under our rules to review the Administrative Law Judge's decision."

*Id*. at 1.  Plaintiff then filed the instant action on November 23, 2011, seeking review of

the SSA's denial of disability benefits during the interim period.  *Doc. 1*.

## II.   APPLICABLE LAW

### A.   Standard of review

Pursuant to 42 U.S.C. § 405(g), a Court may review a final decision of the

Commissioner only to determine whether (1) it is supported by "substantial evidence,"

---

Plaintiff believed this statement was erroneous because the property manager position as generally
performed in the national economy is rated by the Dictionary of Occupational Titles as SVP eight.  *Id*. at
255.  The ALJ appears to have interpreted the testimony to mean that the position of property manager as
actually performed by Plaintiff was rated as SVP four.  *Id*. at 47.  It is also unclear whether the transcript
of the hearing accurately reflects Mr. Driscoll's testimony.  The transcript indicates that he testified the
property manager position was rated SVP four.  *Id*. at 62.  But the ALJ 's decision is internally inconsistent
on this point – it first states the Mr. Driscoll described the position as SVP four but then says that Mr.
Driscoll rated it as SVP six, and goes on to rely on the SVP six rating in analyzing Plaintiff's ability to
return to the job.  *Id*. at 47.

and (2) it comports with the proper legal standards. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). "In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Casias*, 933 F.3d at 800. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id*. at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**B.  Disability determination process**

For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person

satisfies these criteria, the SSA has developed a five step test.  *See* 20 C.F.R. § 404.1520.

If the Commissioner is able to determine whether an individual is disabled at one step,

he does not go on to the next step.  *Id*. § 404.1520(a)(4).  The steps are as follows:

(1) Claimant must establish that he is not currently engaged in "substantial
    gainful activity."  If claimant is so engaged, he is not disabled.
(2) Claimant must establish that he has "a severe medically determinable
    physical or mental impairment . . . or combination of impairments" that have
    lasted for at least one year.  If claimant is not so impaired, he is not disabled.
(3) Claimant must establish that his impairment(s) are equivalent to a listed
    impairment that has already been determined to be so severe as to preclude
    substantial gainful activity.  If listed, the impairment(s) are presumed
    disabling.
(4) If the claimant's impairment(s) are not listed, claimant must establish that the
    impairment(s) prevent him from doing his "past relevant work."  If claimant
    is capable of returning to his past relevant work, he is not disabled.
(5) If claimant establishes that the impairment(s) prevent him from doing his
    past relevant work, the burden shifts to the Commissioner to show that
    claimant is able to "make an adjustment to other work."  If the Commissioner
    is unable to make that showing, claimant is deemed disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

At issue in this case is the fourth step of the five step evaluation process. Step

four of the analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th

Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity in light

of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3).  A

claimant's RFC is "the most [he] can still do despite [his physical and mental]

limitations."  *Id*. § 404.1545(a)(1).  Second, the ALJ determines the physical and mental

demands of claimant's past work.  "To make the necessary findings, the ALJ must

10

obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling 82-62 (1982)).  Third, the ALJ determines whether, in light of his RFC, the claimant is capable of meeting those demands.  *Id*. at 1023, 1025.

### III.   ANALYSIS

The Commissioner and Plaintiff agree as to the first three steps of the disability evaluation: Plaintiff was not engaged in substantial gainful activity as of his alleged onset date of September 1, 2005, and he suffered from numerous severe unlisted impairments during the period between that date and September 9, 2009, when he fractured his pelvis.  The dispute centers on the ALJ's determination of Plaintiff's RFC and his ability to perform his past relevant work in step four.

Plaintiff argues that the ALJ's findings at step four are erroneous for four reasons:  (1) the ALJ's determination that Plaintiff was capable of performing his past work as a property manager during the interim period is not supported by substantial evidence; (2) the ALJ failed to follow the treating physician rule when considering the opinion of Dr. Reininga; (3) the ALJ's credibility findings are not supported by substantial evidence; and (4) the ALJ failed to consider Plaintiff's obesity.  The Court reverses and remands the ALJ's determinations as to Plaintiff's ability to perform his past work, Dr. Reininga's opinion, and Plaintiff's credibility.  The Court affirms the ALJ's consideration of Plaintiff's obesity.

**A.  The ALJ's determination that Plaintiff could perform his past relevant work as a property manager is not supported by substantial evidence and does not comport with the proper legal standards.**

To prove that he cannot return to his past relevant work, a claimant must show that he can perform neither the duties of a past job as he actually performed them nor the duties of the job as generally required by employers in the national economy.  Social Security Ruling (SSR) 82-61 (1982).  Here, the ALJ found that Plaintiff failed to meet that burden because he could return to his prior job as a property manager as he actually performed it.  AR at 47.  The ALJ first concluded that as of September 1, 2006, Plaintiff had the RFC to perform light work, but imposed some additional restrictions.  *Id.*  at 45.  He determined that Plaintiff "could frequently lift/carry no more than ten pounds, occasionally lift/carry twenty pounds, stand and/or walk for six hours, but not for a full eight-hour workday, and sit for eight hours per day."  *Id.*

At the hearing, the ALJ posed a hypothetical to the VE.  He asked the VE whether a person the same age as Plaintiff in September 2005, with the same impairments and the same RFC and restrictions (including the inability to lift more than 20 pounds occasionally), could perform any of Plaintiff's past work as he actually performed it.  *Id.* at 62-63.  The VE answered, "Yes, sir.  The … property manager. The description that's provided in the record fits within that hypothetical, from what was submitted by the claimant."  *Id.* at 63.  Relying on this testimony, the ALJ found that

Plaintiff could have performed his past work as a property manager during the interim period. *Id*. at 47.

The VE stated that his testimony was based on the vocational report Plaintiff submitted with his application for disability benefits. *Id*. at 62. In that report, Plaintiff indicated that he did not frequently lift any weight as property manager, but also indicated that the heaviest weight he lifted in that position was 50 pounds. *Id*. at 224.

As Plaintiff points out, there is a discrepancy here. *See doc. 24* at 17. The VE testified that a hypothetical person who can lift no more than 20 pounds occasionally could perform Plaintiff's prior property manager job as Plaintiff actually performed it, despite the fact that the job as actually performed requires occasionally lifting up to 50 pounds. The ALJ does not discuss this discrepancy. *See* AR at 47. He does not state that he found Plaintiff's assertion that he occasionally lifted 50 pounds as a property manager unreliable or incredible, and does not point to any other evidence controverting that assertion. In fact, the ALJ never mentions the assertion at all, despite his duty to discuss probative evidence that he rejects. *See Clifton*, 79 F.3d at 1010. His determination that Plaintiff can perform his past work as a property manager is therefore not supported by substantial evidence.

Moreover, the ALJ failed to adequately develop the record when he relied entirely on the VE's testimony to determine Plaintiff's ability to perform his past work. The ALJ duly determined Plaintiff's RFC, as required by the first phase of step four, but

he failed to perform the second and third phases: evaluating the physical and mental demands of Plaintiff's past work and whether, in light of his RFC, Plaintiff is able to meet those demands.  *See Winfrey*, 92 F.3d at 1023-25.  As the Tenth Circuit held in *Winfrey*, although an "ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work."  *Id*. at 1025; "When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review."  *Id.; see also Chappell v. Chater*, 99 F.3d 1149, at *2 (10th Cir. 1996) (unpublished).

Here, the ALJ relied entirely on the VE's perfunctory determination that Plaintiff's prior property manager job qualified as light work and that a hypothetical person with Plaintiff's limitations could perform that job.  *See* AR at 47.  He did not ask the VE to elaborate at the hearing, and, in his decision, the ALJ did not explain why the property management job as actually performed by Plaintiff constituted light work, nor why Plaintiff, given his restrictions—including the inability to lift more than 20 pounds—would be able to perform that job.  *Id*.  Therefore, the ALJ failed to follow the proper legal standards in determining whether Plaintiff could perform his past relevant work.

**B.  The ALJ did not abide by the treating physician rule when he rejected the opinion of Dr. Reininga and did not support that rejection with substantial evidence.**

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must determine whether the opinion must be given "controlling weight." *Id*. An opinion must be given controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id*. If the opinion does not meet these criteria, the ALJ must move to the second step where he determines how much weight to give the opinion. *Id*. Treating physician opinions are still entitled to deference, even if they are not given controlling weight. *Id*. The ALJ must weigh the opinion in light of the factors set out in 20 C.F.R. §§ 404.1527, 416.927, which are

> (1) the length of the treatment relationship and frequency of examination;
> (2) the nature and extent of the treatment relationship and the type of treatment provided;
> (3) the degree to which the opinion is supported by relevant evidence;
> (4) whether the opinion is consistent with the rest of the record;
> (5) whether the physician is a specialist in the area within which the opinion was rendered;
> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Krauser*, 683 F.3d at 1331. "In applying these factors, the ALJ's findings must be sufficiently specific to make clear to

any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reason for that weight." *Krauser*, 683 F.3d at 1331 (quotation omitted).

At issue here is the July 17, 2008 opinion of Dr. Mark Reininga. *See* AR at 595-602. The opinion takes the form of a "Multiple Impairment Questionnaire" in which Dr. Reininga states that Plaintiff suffers from COPD, type II diabetes mellitus, obesity, depression, high lipids, hypothyroidism, hypogonadism, and polycythemia. *Id*. at 595. In answer to the question "identify the positive clinical findings that demonstrate and/or support your diagnosis," Dr. Reininga listed Plaintiff's height, weight, BMI, and oxygen saturation rate, as well as his cholesterol, glucose, testosterone, and H1Ac levels. *Id*. He also noted that Plaintiff is obese and depressed, sleeps 14 hours per day, cannot walk 100 feet without stopping, and has poor musculature. *Id*. Later in the questionnaire, Dr. Reininga states that Plaintiff cannot sit for more than four hours in an eight-hour day and cannot stand or walk more than one hour. *Id*. at 597. He also says that Plaintiff can lift and carry up to five pounds occasionally and can never lift anything heavier. *Id*. at 598. In his opinion, Plaintiff is "essentially precluded" from grasping and twisting objects, using his fingers and hands for fine manipulations, and using his arms for reaching. *Id*. at 598-99. When asked whether there are any other limitations that would affect Plaintiff's ability to work, Dr. Reininga checked every available limitation except for limited vision, including the "need to avoid wetness," "need to avoid noise," and "need to avoid temperature extremes." *Id*. at 601.

16

The ALJ does not explicitly state what weight he gave Dr. Reininga's opinion, but it is clear that he did not give it controlling weight and it can be inferred that he rejected it altogether when determining Plaintiff's RFC.  *See id*. at 44-45.  He provides five reasons for that determination: (1) there was "no indication that Dr. Reininga was aware of the entire body of medical evidence in this case;" (2) the questionnaire "was not prepared for legitimate medical purposes of diagnosis or treatment;" (3) Dr. Reininga "did not related [sic] diagnostic tests or clinical observations to the proposed limitations;" (4) Dr. Reininga's stringent restrictions are inconsistent with the findings of other physicians; and (5) Dr. Reininga's records do not support the restrictions he suggests.  *Id.*  The first two reasons are not valid considerations under the controlling weight test.  Under that test, the ALJ considers only whether the opinion is well-supported by medically acceptable clinical or laboratory diagnostic techniques and whether it is inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  Moreover, the Tenth Circuit treats questionnaires completed to support a patient's disability benefits application as valid treating physician opinions.  *See Krauser*, 638 F.3d at 1329-32.

As to the other three reasons, the ALJ provides little explanation to support his conclusions.  In fact, the ALJ compares Dr. Reininga's findings to those of only one other physician – Dr. Stamm.  AR at 45.  He suggests that Dr. Stamm's findings do not support the restrictions imposed by Dr. Reininga because his July 24 and August 28,

17

2008, examinations indicated that Plaintiff's respiratory movements, coordination and balance, and cardiac functioning were normal.  *Id*. at 45, 669-75.  He does not discuss why those findings are necessarily inconsistent with Dr. Reininga's restrictions, nor does he address the fact that Dr. Stamm agreed with Dr. Reininga that Plaintiff suffered from hypertension, hyperlipidemia, type II diabetes mellitus, and COPD.  *Id*. at 45, 672, 668.

Even assuming that the ALJ's determination not to give Dr. Reininga's opinion controlling weight is reasonable, he fails to proceed to the next step of the analysis and determine what amount of deference the opinion is due in light of the § 404.1527 factors. An ALJ is not required to expressly address all of the factors, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), but if he rejects the opinion of a treating physician, he must give "specific, legitimate reasons for doing so." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  "The treating physician's opinion is given particular weight because of his 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

Here, there is no indication that the ALJ took into account the fact that Dr. Reininga had been seeing Plaintiff regularly since July 28, 2007.  *Id*. at 578-92, 595.  Nor does he explain why he gave Dr. Trujillo's opinion significantly more weight than Dr.

Reininga's opinion, despite the fact that Dr. Trujillo was a consulting physician who only examined Plaintiff once at the request of the SSA. *See id*. at 566. The ALJ's rejection of Dr. Reininga's opinion appears primarily premised upon its inconsistency with the findings of other doctors. *Id.* at 44-46. However, Dr. Reininga's diagnoses are largely in line with those of Dr. Chavez, Dr. Trujillo, Dr. Webber, and Dr. Stamm. All four doctors state that Plaintiff suffers from hypertension, hyperlipidemia, and type II diabetes mellitus. *Id*. at 449, 622, 624 (Dr. Webber); *Id*. at 488-96 (Dr. Chavez); *Id*. at 566-68 (Dr. Trujillo); *Id*. at 672 (Dr. Stamm). Dr. Trujillo and Dr. Stamm both diagnosed COPD. *Id*. at 568 (Dr. Trujillo); *Id*. at 668 (Dr. Stamm). Dr. Chavez, Dr. Webber, and Dr. Stamm diagnosed coronary artery disease. *Id*. at 489 (Dr. Chavez); *Id*. at 622 (Dr. Webber); *Id*. at 672 (Dr. Stamm). Dr. Chavez agreed with Dr. Reininga that Plaintiff suffered from hypothyroidism and hypogonadism. *Id*. at 489-90.

The only doctors aside from Dr. Reininga who appear to have directly addressed Plaintiff's ability to function in the workplace are Dr. Trujillo and Dr. Steinman. Dr. Trujillo opined that Plaintiff "should be able to perform light duty with a lifting limit of 20 pounds," *id*. at 568, while Dr. Steinman said that Plaintiff may have difficulties relating to co-workers but has sufficient intellectual ability to adapt to basic changes in his work environment, *id*. at 529. The ALJ does not explain why these limited statements by consulting physicians examining Plaintiff on behalf of the SSA should outweigh the opinion of his treating physician. While the ALJ may have had his

reasons, he does not articulate them and the Court is "not in a position to draw factual conclusions on behalf of the ALJ." *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). "[W]hen . . . the ALJ does not provide any explanation for rejecting medical evidence, [the Court] cannot meaningfully review the ALJ's determination." *Id*. Thus, the ALJ failed both to follow the treating physician rule and to support his rejection of Dr. Reininga's opinion with substantial evidence.

**C. The ALJ's credibility determination is not supported by substantial evidence.**

In order to determine how much weight to give a claimant's statements about his symptoms when determining his RFC, the ALJ must evaluate the claimant's credibility. "Credibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001). When assessing a claimant's credibility, the ALJ considers

(1) The claimant's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate or aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate symptoms;
(5) Treatment, other than medication, the claimant receives or has received for his symptoms;
(6) Any measures other than treatment the claimant uses or has used to alleviate his symptoms;
(7) Any other factors concerning the individual's functional limitations and restrictions due to his symptoms.

20 C.F.R. § 404.1529(c)(3); SSR 96-7p (1996).  The ALJ may also consider the consistency of the claimant's statements, both internally and with other information in the record, as well as the claimant's treatment history and medical records.  SSR 96-7p (1996).  The ALJ's evaluation of the claimant's credibility must contain "specific reasons" for his findings and must link those findings to substantial evidence.  *Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004).

The ALJ addresses Plaintiff's credibility in two sections of his decision: "Evaluation of Subjective Complaints" and "Severe Impairments."  In the former, the ALJ first lists Plaintiff's descriptions of his symptoms and limitations.  AR at 43.  He then concludes by stating that he "evaluated claimant's testimony and other statements regarding daily activities, restrictions, and symptoms, but I considered several factors and they are not controlling.  In addition to the testimony and objective medical facts/opinions, I considered other relevant factors, including [the factors listed in SSR 96-7p, see above]."  *Id*.  Although the ALJ does not explicitly conclude that Plaintiff was not credible, his language, which mirrors the relevant credibility factors, suggests that his evaluation has led to an adverse credibility finding.  However, the ALJ's discussion in this section lacks any evaluation or analysis.  The Tenth Circuit has made clear that a "conclusion in the guise of findings" is insufficient; the ALJ must link the factors to evidence in the record.  *Hardman* 362 F.3d at 679.  A "boilerplate [recitation of the factors] fails to inform us in a meaningful, reviewable way of the specific evidence the

21

ALJ considered in determining that claimant's complaints were not credible." *Id*.  Thus,

the ALJ's remarks in the "Evaluation of Subjective Complaints" section do not

contribute to the substantial evidence necessary to support a finding that Plaintiff lacks

credibility.

In the "Severe Impairments" section, the ALJ mentions three discreet reasons for

questioning Plaintiff's credibility: (1) Plaintiff's statement that he left his job because he

was laid-off rather than because of any disability; (2) Plaintiff's noncompliance with diet

and exercise; and (3) Plaintiff's denial of a blood sugar problem in July 2006 despite

having had a blood test showing elevated glucose in March 2006.  *See* AR at 41-42.  The

ALJ puts significant weight on the third factor, noting that a "blood test showed

elevated glucose in March 2006, for which he was later prescribed metformin."  *Id*. at

41-42, 494, 510.  However, four months later on July 24, 2006, Plaintiff denied having a

blood sugar control problem when he visited Dr. Timothy Johnson, an ophthalmologist,

regarding the possibility of LASIK surgery.  *Id*. at 41-42, 265.  The ALJ concludes that

this discrepancy indicates that Plaintiff intentionally lied to Dr. Johnson: "by these

patently false statements, claimant has fundamentally damaged his credibility and I

warily approached even those statements routinely accepted at face value."  *Id*. at 42.

The Court finds this far-reaching conclusion unsupported by the evidence

proffered.  The March 2006 blood test indicated only that Plaintiff's glucose level was

116.  *Id*. at 510.  The guidelines on that same page state that a glucose level between 100

and 125 indicates an "impaired fasting glucose," while a level above 125 is "abnormal"

and "consistent with Diabetes Mellitus."  *Id*.  Dr. Chavez's notes state that "[g]lucose

was 116 fasting" but do not indicate that he brought the high glucose level to Plaintiff's

attention or warned Plaintiff about the possibility of developing diabetes.  *Id*. at 494.  As

Plaintiff points out in his motion, he was not diagnosed with diabetes until September

2006, after the July 2006 ophthalmologist appointment.  *Doc. 24* at 23; AR at 405 (dated

Sept. 1, 2006 and stating that Plaintiff has a secondary diagnosis of diabetes); AR at 452

(dated Sept. 21, 2006 and stating that Plaintiff's diabetes is "newly diagnosed").

Consequently, this evidence is insufficient to show that Plaintiff intentionally lied to Dr.

Johnson because (1) he may not have been aware of his high blood sugar when he

visited the ophthalmologist, and (2) he may have merely forgotten about his March

blood test results.  Given that this factor significantly colored the ALJ's credibility

finding and the scantness of other grounds for such a finding, the Court finds that the

ALJ's credibility determination is not supported by substantial evidence.

### D. __The ALJ adequately considered Plaintiff's obesity.__

Plaintiff accuses the ALJ of failing to adequately consider his obesity when

determining Plaintiff's RFC.  *Doc. 24* at 24-25.  "Social Security Ruling 02-1p requires an

ALJ to consider the effects of obesity when assessing RFC, including the fact that 'the

combined effects of obesity with other impairments can be greater than the effects of

each of the impairments considered separately.'"  *DeWitt v. Astrue*, 381 F. App'x 782,

785 (10th Cir. 2010) (*quoting* SSR 02-1p (2002)).

The ALJ determined that Plaintiff's obesity was a severe impairment at step two

of the five step analysis.  AR at 49.  While the ALJ did not explicitly examine the impact

of Plaintiff's obesity on each of his other impairments, the Tenth Circuit does not

require such a thorough analysis.  *See, e.g., Camp v. Barnhart*, 103 F. App'x 352, 354 (10th

Cir. 2004) (affirming when ALJ stated only that the medical evidence showed that

Plaintiff's "weight would not prevent [him] from performing light work with the

limitations listed"); *Fagan v. Astrue*, 231 F. App'x 835, 838-39 (10th Cir. 2007) (affirming

even though "the ALJ did not reference SSR 02-1p or explicitly examine the impact of

Ms. Fagan's obesity on each of her . . . impairments").

The ALJ reviewed Plaintiff's medical records which indicated that "despite

[Plaintiff's] impairments, including obesity, claimant was not in acute distress, he had a

normal gait, and . . . . full ranges of motion in his spine and all joints."  AR at 44.  He

concluded that "while claimant is obese, there are no signs of a debilitating

vertebrogenic disorder and his weight-bearing joints are normal."  *Id.* at 45.  This is

precisely the sort of obesity analysis the Tenth Circuit upheld in *Arles v. Astrue*, 438 F.

App'x 735 (10th Cir. 2011), in which the ALJ "examined the medical records and found

'no evidence of an inability to ambulate effectively or an inability to perform fine and

gross movements effectively.'"  438 F. App'x at 740 (quoting ALJ's decision).

Plaintiff, moreover, cites to no evidence demonstrating that his obesity limits his

abilities beyond the restrictions that the ALJ already imposed.  *See Fagan*, 231 F. App'x at 838-39 (affirming when Plaintiff, who has burden at step three of the disability analysis, failed to show additional limiting effect of obesity); *Arles*, 438 F. App'x at 740 (same).  Rather, Plaintiff cites *Stemple v. Astrue*, 475 F. Supp. 2d 527 (D. Md. 2007), which held that the ALJ should consider the effect of plaintiff's obesity on her diabetes and hypertension at step two of the disability analysis.  475 F. Supp. 2d at 540-41.  Not only is *Stemple* a District of Maryland case, it also distinguishes its holding from those cases finding that the ALJ does not have to explicitly discuss obesity at step four.  *Id*. at 539-40.  Therefore, the ALJ adequately considered Plaintiff's obesity in determining his RFC.

## IV.   CONCLUSION

The Court finds that the ALJ's determinations regarding Plaintiff's past relevant work, Dr. Reininga's opinion, and Plaintiff's credibility did not comport with proper legal standards and were not supported by substantial evidence.  However, the ALJ's consideration of Plaintiff's obesity was adequate.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse and Remand is GRANTED.  This action is REMANDED to the Commissioner for further proceedings consistent with this opinion.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**